IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-40087
Summary Calendar
_____


ANITA HERNANDEZ,

                                    Plaintiff-Appellant,

        versus

JAMES N. MUNS, in his capacity as
Mayor of the City of Plano;
CITY OF PLANO,

                                    Defendants-Appellees.


_____

Appeal from the United States District Court for the
Eastern District of Texas
(4:94-CV-17)
_____

October 21, 1996
Before GARWOOD, JOLLY and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

     Plaintiff-appellant Anita Hernandez (Hernandez) appeals the

judgment dismissing her employment discrimination claims against

her former employer, defendant-appellee the City of Plano (City).[1]

---

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

[1]     Hernandez also sued James N. Muns (Muns) in his official
capacity as Mayor of the City, and the district court's judgment
likewise dismissed all claims against Muns.  As Muns is sued only
in his official capacity, the entire suit is properly treated as a
suit against the City only, and Hernandez does not contend

Hernandez brought this suit against the City for alleged national origin discrimination and retaliatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994) (Title VII). At the close of Hernandez's case-in-chief, the district court granted the City's motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, concluding that Hernandez failed to prove a *prima facie* case of discrimination and unlawful retaliation under Title VII. For the reasons that follow, we affirm.

## Facts and Proceedings Below

Anita Hernandez, an Hispanic female, began her employment with the City in May 1988, first as a secretary with the Capital Projects Department, and later as a secretary with the Budget and Research Department. During her years with these departments, Hernandez's job performance was satisfactory.

In March 1991, Hernandez responded to an internal posting of a job vacancy with the Municipal Courts Department. The job posting was for a Secretary III position, and indicated, among other things, that the ability to speak Spanish was a strong "plus." Although she is not fluent in Spanish, Hernandez wanted to increase her chances of obtaining the job, and thus indicated in a cover letter attached to her application that "I am a volunteer as an interpreter or translator for all City departments that do not

otherwise.

2

understand the Spanish language. My demonstrated ability to meet the demands and responsibilities of this field would prove to be an asset to your department."

Hernandez was granted an interview for the job. She was interviewed by Vicki Sherman (Sherman), a Caucasian female, for a position to serve as her secretary with the municipal courts. Sherman was the Clerk of the City's municipal court. At the end of the interview, Sherman hired Hernandez on the spot, and appeared "excited" when Hernandez accepted the job.

Shortly after she began her new job with the Municipal Courts Department, Hernandez was asked by Sherman to perform Spanish translations for citizens who could not speak English and had business with the municipal courts. Hernandez had difficulty performing the translations. Sherman confronted Hernandez about her translation skills and alleged that Hernandez had falsely exaggerated her ability to speak Spanish in order to secure the position. In response to these allegations, Hernandez told Sherman that she had never claimed she was fluent in Spanish.

Approximately one month after this incident, in June 1991, Hernandez reported Sherman's criticism of her translation skills to Joe Francis (Francis), the City's Director of Human Resources. Hernandez told Francis she believed Sherman was discriminating against her because of her Hispanic national origin. Francis told Hernandez that it was not discrimination and that she was experiencing a personality conflict with Sherman.

3

The following month, Sherman placed Hernandez on a performance improvement plan (PIP), a plan designed to assist employees improve their job performance over a period of time. During this time, Sherman told Hernandez to start looking for another job. In October 1991, Sherman released Hernandez from the PIP.

During the fall of 1992, Hernandez started making notes in her desk calendar of various incidents she believed evidenced discriminatory treatment by Sherman.[2] In September 1992, when Sherman confronted Hernandez regarding the notes, Hernandez responded that she was keeping notes because she believed she was being discriminated against. In October 1992, Hernandez complained to Jim Forte, Director of Finance and Sherman's immediate supervisor, about the alleged discrimination. Forte told Hernandez that he was going to speak with Sherman.[3]

Sherman placed Hernandez on a second PIP in November 1992. While she was on the PIP, two citizen complaints were made with the City regarding Hernandez. Subsequently, in December 1992, Sherman fired Hernandez.

Immediately thereafter, in accordance with City procedure, Hernandez completed a disciplinary appeal form with a short statement in support of her appeal. This form was forwarded to Jim

---

[2] Hernandez offered no evidence to demonstrate what these alleged discriminatory acts were or what the calendar notes contained.

[3] It is unclear from the record whether Forte actually talked with Sherman about Hernandez's complaint.

4

Forte, who upheld the dismissal. Hernandez then filed her second appeal with Elvenn Richardson, the Assistant City Manager, who after two meetings with Hernandez, also upheld the dismissal. Hernandez filed her third and final appeal with Thomas Muehlenbeck, the City Manager. After meeting with Hernandez, Muehlenbeck likewise upheld the dismissal.

Sometime during or after her third appeal with the City, Hernandez filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that she was terminated as a result of her national origin. After an investigation of her claims, the EEOC determined that Hernandez was discharged for poor performance and was not discriminated against by the City.[4] Upon receiving the EEOC's right-to-sue letter,

---

[4] As shown by the trial evidence, the official determination of the EEOC was as follows:

"The evidence shows that Charging Party was counseled on several occasions regarding her job performance. The Charging Party was reprimanded for refusing to comply with the instructions of the supervisor. The Charging Party was placed on a performance improvement program for failure to meet acceptable levels of performance. The evidence also shows that the Charging Party was discharged for failure to improve her performance and specifically because of complaints from citizens regarding her rudeness.

The investigation shows that four non-Hispanics were placed on performance improvement programs and discharged for similar reasons as the Charging Party.

I have determined that the evidence obtained during the investigation does not establish a violation of the statute."

5

Hernandez filed this action against the City.

At the close of Hernandez's case-in-chief, the district court granted the City's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. Hernandez timely filed this appeal.

## Discussion

Hernandez argues on appeal that the district court erred in granting the City's motion for judgment as a matter of law on her Title VII claims.[5] We review the district court's decision *de novo*, applying the same legal standard used by the court below. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1387 (5th Cir. 1996). Judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. *London v. Mac Corp. of America*, 44 F.3d 316, 318 (5th Cir.), *cert. denied*, 116 S.Ct. 99 (1995). As stated in our *Boeing v. Shipman* decision,

> "On motions for [judgment as a matter of law], the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men

---

[5] In addition to the Title VII charges of discrimination and retaliatory discharge, Hernandez originally brought other causes of action against the City, including claims of substantive and procedural due process violations. The district court granted the City's motion for summary judgment on all claims except Hernandez's Title VII claims. On appeal, she challenges only the district court's decision to grant the City's motion for judgment as a matter of law on her Title VII charges. Thus, the court's summary judgment order is not before this Court.

6

> could not arrive at a contrary verdict, granting of the motion is proper.  On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[] should be denied, and the case submitted to the jury.  A mere scintilla of evidence is insufficient to present a question for the jury."

411 F.2d 365, 374 (5th Cir. 1969) (en banc); *see also Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 859 (5th Cir. 1991) (applying *Boeing* standard).

I.   National Origin Discrimination Claim

Hernandez claims that the City unlawfully discriminated against her on the basis of her Hispanic national origin. Specifically, Hernandez alleges the City treated her differently, as evidenced by requiring her to do Spanish translation work without receiving any "credit" and without requiring similar translation work from the secretary who previously had held Hernandez's position.[6]

---

[6]   The City argues that, because Hernandez's intentional discrimination claim stems from allegedly unlawful acts committed by Sherman——the same person who hired Hernandez——we should apply the "same actor" inference in this case.  Under the same actor inference, "where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991).  Many courts, including this Court, have recently adopted the same actor inference. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (ADEA case); *see also E.E.O.C. v. Our Lady of Resurrection Medical Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996) (Title VII race discrimination case); *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461, 464 (6th Cir. 1995) (Title VII sex discrimination case), *cert. denied*, 116 S.Ct. 785 (1996); *Tyndall*

7

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin.[7] *See* 42 U.S.C. § 2000e-2 *et seq.* In a claim of "disparate treatment" under Title VII, a plaintiff alleges that an employer intentionally treats "some people less favorably than others because of their race, color, religion, sex, or national origin." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335

---

*v. National Educ. Ctrs.*, *Inc. of California*, 31 F.3d 209, 215 (4th Cir. 1994) (ADA case); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993) (ADEA case), *cert. denied*, 114 S.Ct. 1398 (1994); *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992) (ADEA case). *Cf. Haun v. Ideal Industries, Inc.*, 81 F.3d 541, 546 (5th Cir. 1996) (stating that although same actor evidence "is relevant in determining whether discrimination occurred, we decline to establish a rule that no inference of discrimination could arise under such circumstances"). Depending on the factual setting, the same actor inference may be considered in determining whether a purported *prima facie* case, resting entirely on circumstantial evidence, has been sufficiently made out, although more usually the same actor inference will have its primary relevance at a later stage of the case.

[7]  42 U.S.C. § 2000e-2(a) provides as follows:

"(a) It shall be an unlawful employment practice for an employer——(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

n.15, 97 S.Ct. 1843, 1854-55, n.15 (1977); *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1523 (5th Cir. 1993).

To prove intentional discrimination, a plaintiff may use either direct or circumstantial evidence. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). Under Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face. *Id.* at 329. "When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). If believed, direct evidence proves intentional discrimination without inference or presumption. *Id.*

In the absence of direct evidence, illegal motive can be established through circumstantial evidence that invokes a three step model of proof. First, the plaintiff must demonstrate a *prima facie* case of discrimination. A Title VII plaintiff carries "the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *International Bhd. of Teamsters*, 431 U.S. at 358, 97 S.Ct. at 1866. Generally, the plaintiff's *prima facie* case includes the following elements: (1) the plaintiff is a member

9

of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the defendant made an adverse employment decision despite the plaintiff's qualifications; and (4) the plaintiff's position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications or hired a person who was not a member of a protected group. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973); *see also Frazier*, 980 F.2d at 1526. However, this is not the only means of demonstrating a *prima facie* case, as *McDonnell Douglas* "did not purport to create an inflexible formulation." *International Bhd. of Teamsters*, 431 U.S. at 358, 97 S.Ct. at 1866. "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas Corp*., 411 U.S. at 802 n.13, 93 S.Ct. at 1824 n.13.

If a plaintiff establishes a *prima facie* case of discrimination, the defendant bears the burden to see to it that some evidence of a nondiscriminatory basis for the adverse employment decision is presented. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981). If evidence is presented of a reason that is nondiscriminatory, "the McDonnell Douglas framework—with its presumptions and burdens—is no longer relevant." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

10

510, 113 S.Ct. 2742, 2749 (1993). According to the Court:

> "The presumption [raised by the plaintiff's prima facie case], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture . . . . The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether [the] plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race . . . . The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."

*Id.* at 2749 (citations omitted).

Based on the record before us, we conclude that Hernandez has failed to demonstrate discrimination either by direct evidence or by articulating a *prima facie* case of disparate treatment. Hernandez presents no direct evidence of intentional discrimination, as, for example, there is no evidence that Sherman or anybody else made reference to her Hispanic heritage at any time during her employment with the City. Indeed, nothing indicates that Sherman treated Hernandez differently because of her national origin. Rather, the evidence shows only that Sherman expected Hernandez to use whatever skills she brought to her job to the best of her abilities, which in Hernandez's situation included Spanish translation skills which Hernandez represented she possessed.

Hernandez's translation duties did not require her to do any extra work. She was asked to do Spanish translations during her normal working hours as part of her job duties and her translation

11

responsibilities did not cause her to work extra hours without compensation. Thus, Hernandez was not discriminated against simply because she was denied extra "credit" for her translation work. *See, e.g., Cota v. Tucson Police Dept.*, 783 F.Supp. 458, 468 (D.Ariz. 1992) (holding that plaintiffs failed to prove *prima facie* case of discrimination under Title VII where police department required Spanish-speaking employees to use their Spanish-speaking skills on the job without additional compensation).

Moreover, the fact that the secretary who previously had held Hernandez's position was Caucasian and was not required to perform translation work does not constitute any evidence of discrimination. The secretary who came before Hernandez was not asked to do Spanish translations because, as Hernandez's own testimony reveals, she could not speak Spanish. Also, nothing in the record indicates that the previous secretary claimed she could perform translation work.

Finally, Hernandez has failed to demonstrate discrimination by the City through the *McDonnell Douglas* circumstantial model of proof. Importantly, Hernandez does not show, as part of her *prima facie* case, that she was performing well in her job at the time of her termination. *See O'Connor v. Consolidated Coin Caterers Corp.*, 84 F.3d 718, 719 (4th Cir. 1996); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993), *cert. denied*, 114 S.Ct. 1372 (1994); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th

12

Cir. 1990). "[W]hether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time." *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 427 (7th Cir. 1989) (*quoting Grohs v. Gold Bond Bldg. Products*, 859 F.2d 1283, 1287 (7th Cir. 1988)). Hernandez failed to present any admissible evidence that would indicate that her performance was satisfactory when she was fired. At trial, the court sustained defense counsel's objections to Hernandez's testimony regarding her work performance.[8] Although allowed to do so, Hernandez did not offer into evidence any performance evaluations. Indeed, the only evidence of the quality of her work performance prior to her dismissal was her own testimony that Sherman told her in April 1992 that she was doing a "good job" and showed improvement. This evidence—standing, as it does, essentially alone—does not support Hernandez's contention that her performance was satisfactory when she was terminated in December 1992. The short of the matter is that Hernandez has failed to raise an inference of unlawful discrimination and, therefore, failed to articulate prima facie proof of discrimination.

II. Unlawful Retaliation Claim

In addition to appealing her national origin discrimination

---

[8] Hernandez does not assert on appeal any claim of error in respect to this ruling.

13

claim, Hernandez also argues on appeal that the district court erred in granting the City's motion for judgment as a matter of law on her unlawful retaliation claim. Hernandez alleges that, in retaliation for her complaints to Joe Francis and Jim Forte of discrimination, Sherman placed her on the PIPs in July 1991 and November 1992, and ultimately fired her in December 1992.

A plaintiff establishes a *prima facie* case of unlawful retaliation by proving by a preponderance of the evidence that (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Long*, 88 F.3d at 304 (citation omitted). The burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas*, is also applicable to Title VII unlawful retaliation cases. *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). In other

14

words, once the plaintiff satisfies the elements of her *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Long*, 88 F.3d at 304-05. If the defendant presents a legitimate, nonretaliatory reason for the action, the analysis then focuses on the ultimate question of whether the employer unlawfully retaliated against the plaintiff. *Id.* at 305 & n.4.

We must first determine whether Hernandez has established her *prima facie* case for unlawful retaliation. Hernandez asserts that she had a "reasonable belief" that the practices she opposed were unlawful. We disagree.

On two separate occasions, Hernandez complained that she felt Sherman was discriminating against her because of her Hispanic heritage. Her first complaint was made to Joe Francis in June 1991, one month after Sherman accused her of misrepresenting her Spanish translation skills. Sherman's accusation, however, cannot reasonably be construed as conduct that violates Title VII. When applying for the position as Secretary III, Hernandez knew that the ability to speak Spanish was "a plus." In fact, Hernandez testified that the reason she specifically mentioned in her application cover letter that she had translation experience was because she believed it would better her chances of obtaining the job. Hernandez could not reasonably believe she was discriminated against by Sherman's expressed disappointment in her inability to

15

perform a task that Hernandez knew was likely part of the job and as to which she had touted her skills in her application.[9]

Hernandez made her second complaint of discrimination to Jim Forte, Sherman's supervisor, one month after Sherman's and Hernandez's discussion regarding the notes written on Hernandez's calendar. Again, Hernandez complained to Forte of what she perceived as discrimination by Sherman. However, nothing in the record supports her claim that her belief was reasonable. While it may be true that Sherman told Hernandez that she did not want Hernandez as her secretary and to start looking for another job, these statements alone cannot reasonably be interpreted as discrimination. Sherman's statements to Hernandez were no different from statements any supervisor would make to an employee whose work was unacceptable. Indeed, the only evidence Hernandez presented at trial that she claims supports her reasonable belief of discrimination is her own testimony that she told Sherman, when confronted about the notes on her calendar, that she wrote the notes because she believed she was being discriminated against.[10]

_____

[9] The parties agree that the Secretary III position once held by Hernandez did not expressly require Spanish translation duties. However, the Secretary III job description stated that the listed responsibilities and qualifications "are intended to describe the general nature and level of work being performed and *are not intended to be an exhaustive list of all responsibilities*, *duties and skills which may be required*." (Emphasis added).

[10] Although Hernandez asserts on appeal that Sherman subjected her to "hostile stares and abusive language" and that Sherman was more tolerant of and more helpful to Hernandez's non-Hispanic coworkers, the portions of the record cited to support these

16

While Hernandez might have held a good-faith belief that she suffered discrimination, she offers no admissible evidence that even remotely suggests her belief was reasonable. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140-41 n.11 (5th Cir. 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630 (1982); *see also De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 852 n.2 (5th Cir. 1982).

Even if we assume, *arguendo*, that Hernandez had a reasonable belief that Sherman's conduct violated Title VII, the PIPs she was placed on do not constitute adverse employment actions. Sherman's placement of Hernandez on the PIPs did not cause her to lose job duties, hours, wages, benefits, or in any way adversely affect other terms or conditions of her employment. *See, e.g., Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (holding no adverse action where plaintiff's demotion was temporary and did not result in a reduction in salary or loss of benefits). To the contrary, the PIPs were designed to *assist* Hernandez in recognizing areas which needed improvement.

"Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995).

assertions do not in fact support them. The evidence does not show a reasonable basis for believing Hernandez was discriminated against in this respect.

17

Here, the placement of Hernandez on the PIPs does not rise to the level of an ultimate employment decision of the character that Title VII was intended to address. *But see Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435-36 (5th Cir. 1995) (sustaining summary judgment for defendant although finding a *prima facie* case of retaliation made where employee put on PIP; no discussion of whether placement on PIP constitutes adverse employment action).

Of course, Hernandez's discharge constitutes an ultimate and adverse employment action. *Long*, 88 F.3d at 305. However, Hernandez fails to meet the third requirement of her *prima facie* case, that is, she fails to demonstrate a causal link between her termination and the alleged protected activity. Assuming *arguendo*, as before, that Hernandez reasonably believed Sherman discriminated against her, Hernandez cannot point to any evidence that supports her argument that she would not have been terminated absent her complaints of discrimination. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (*citing Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984)); *McCray v. DPC Industries, Inc.*, No. 2-94 CV 45, 1996 WL 426810 at *8 (E.D. Tex. April 12, 1996); *Suttles v. United States Postal Service*, 927 F.Supp. 990, 1008 (S.D. Tex. 1996).[11]

---

[11]  Hernandez need not, however, show that retaliation was the sole factor in the termination decision. *See Long*, 88 F.3d at 305 n.4.

Hernandez asserts in her brief that "[t]he causal connection is found by Sherman's departure from established practice in placing Anita Hernandez on a PIP and on the close proximity in time between the opposition practice and the adverse PIP and dismissal." However, Hernandez failed to present any evidence as to what the "established procedures" are or how Sherman deviated from such procedures when she placed Hernandez on the PIPs. Hernandez's subjective belief of a causal link, without more, is simply not enough. *See generally Suttles*, 927 F.Supp. at 1010, and cases cited therein.

Moreover, Hernandez's emphasis on the length of time between the protected activity and her discharge is misplaced. Hernandez complained of discrimination to Francis in July 1991 and Forte in October 1992, and was terminated in December 1992, approximately two months after her complaint to Forte. Although the timing of the adverse employment action can be significant, it is not necessarily a determinative factor. *Mayberry v. Bought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995). The lapse of time should be weighed "as one of the elements in the entire calculation of whether [plaintiff] had shown a causal connection between the protected activity and the subsequent firing." *Shirley*, 970 F.2d at 42-45. The evidence presented by Hernandez does not support the conclusion that her termination was causally connected to her complaints. Instead, what the evidence shows is that Hernandez was

19

placed on two PIPs prior to her termination, she was terminated while on her second PIP, and the decision to terminate Hernandez was rendered after citizen complaints about her rude behavior when helping them. Hernandez has failed to produce evidence that, but for her complaints, she would not have been terminated.

In any event, even if we assume, *arguendo*, that the placement of Hernandez on the PIPs or her termination somehow satisfy the requirements of her *prima facie* case, Hernandez has produced no evidence that the nondiscriminatory reasons for the adverse action—that Hernandez could not adequately perform her translation duties and citizens complained of her rude attitude—were pretextual.

In sum, we hold that Hernandez failed to demonstrate that she engaged in an activity protected by Title VII. Assuming, *arguendo*, that Hernandez satisfies the first step of her *prima facie* case, we conclude she has not shown that Sherman's decision to place her on the PIPs was an adverse employment decision or that it was done for a discriminatory reason; nor has Hernandez shown that the termination decision was causally linked to her alleged protected activity.

### Conclusion

Based on the foregoing, we AFFIRM the district court's order granting the City's motion for judgment as a matter of law.